JS-6

1

2

3

4

5

6          UNITED STATES DISTRICT COURT

7          CENTRAL DISTRICT OF CALIFORNIA

8                    WESTERN DIVISION

| | |
|---|---|
| 9  IN RE: HOLY HILL COMMUNITY<br>10  CHURCH | Adversary Proceeding, 2:15-ap-01467 WB<br>CASE NO. CV-16-5739-MWF<br>CASE NO. CV-16-5828-MWF-MRWx<br><br>OPINION AFFIRMING THE<br>BANKRUPTCY COURT [16-CV-<br>5739]; AND DENYING PETITION<br>FOR WRIT OF MANDAMUS [16-CV-<br>5828, DOCKET NO. 2] |

11

12

13

14

15

16          Before the Court is a bankruptcy appeal from the Bankruptcy Court in case

17  number 16-cv-5739 (the Honorable Julia W. Brand, United States Bankruptcy

18  Judge) (the "Bankruptcy Court").  Appellants Palisades Capital Partners LLC and

19  1111 Sunset Boulevard, LLC, filed an Opening Brief on October 3, 2016.  (Docket

20  No. 23).  Richard Laski, acting as the Principal of the Reorganized Debtor, filed an

21  Opening Brief on October 3, 2016.  (Docket No. 26).  Appellee 1111 Sunset, LLC

22  filed an Answering Brief on October 27, 2016.  (Docket No. 29).  Appellee

23  Metropolitan Water District of Southern California filed a Joint Answering Brief

24  with 1111 Sunset, LLC on October 28, 2016.  (Docket No. 31).  Appellants

25  Palisades Capital Partners LLC and 1111 Sunset Boulevard, LLC filed a Reply Brief

26  on November 14, 2016.  (Docket No. 38).  Appellant Laski filed a Reply Brief on

27  November 16, 2016.  (Docket No. 41).

28

1

Also before the Court is a Petition for Writ of Mandamus filed by Palisades Capital Partners LLC and 1111 Sunset Boulevard, LLC on August 4, 2016, in case number 16-cv-5828.  (Docket No. 2).  A Supplement to the Petition was filed on September 2, 2016.  (Docket No. 13).  The Court held a telephonic status conference on November 14, 2016, during which the parties agreed the merits of the Writ and the appeal overlapped to such a degree that no responsive filings to the Petition should be required from Appellees.  The Court accordingly will address the Petition and the appeal in this Order.

The Court **AFFIRMS** the Bankruptcy Court on the basis of standing.  The Court will not reach the Bankruptcy Court's alternative basis of res judicata.  The action is **REMANDED** for the limited purpose of correcting the scope of the dismissal, as the parties have already agreed.  The Petition is **DENIED**.

I.    **BACKGROUND**

Holy Hill Community Church ("HHCC") filed a voluntary Chapter 11 petition on June 5, 2014.  After proceedings in the Bankruptcy Court, the Trustee's Second Amended Chapter 11 Plan became effective on January 1, 2016.  HHCC then became the Reorganized Debtor and the Chapter 11 Trustee, Richard Laski, became the Principal of the Reorganized Debtor.

Appellants then contracted to purchase the real property located at 1111 Sunset Blvd., Los Angeles, CA 90012, which had been previously owned by HHCC, from Laski.  This parcel is referred to by the parties as "Parcel B."

The purchase and sale agreement (the "PSA") for the purchase of Parcel B provided for the purchase of additional property and rights, and included an option for the purchase of claims described as "any claims related to transfers that are preferences under the Bankruptcy Code and claims related to the enforceability of the Reciprocal Use Agreements," which claims were referred to in the PSA and are also referred to in the Second Amended Verified Complaint ("SAC") as the "Reserved Claims."  (Appellants' Appendix, Ex. 3 ¶ 175).

The PSA defined the "Reciprocal Use Agreements" as "that Reciprocal Use Agreement recorded as Instrument No. 01-1906087 in the Official Records of Los Angeles County, California, as alleged to be amended by that First Amendment to Reciprocal Use and Easement Agreement recorded as Instrument No. 20121064483 in the Official Records of Los Angeles County, California."  That definition includes a two-page Reciprocal Use Agreement dated on or about September 28, 2001 (the "RUA") and the "First Amendment to the Reciprocal Use and Easement Agreement dated on or about May 10, 2012 (the "Amendment").  (*Id.* ¶ 177).

Appellants closed on the purchase under the PSA and acquired Parcel B.  (*Id.* ¶ 176).  On November 18, 2015, Appellants exercised the option to purchase the Reserved Claims, acquiring all of the claims related to the enforceability of the RUA and the Amendment.  (*Id.* ¶ 177).

**A.**     **Prior History of the Property**

The property at issue was subdivided in 2001 into two parcels, Parcel A and Parcel B, the parcel discussed above.  (*Id.* ¶ 32).  Parcel A was originally leased and then sold to Mr. and Mrs. De Young Kim.  Parcel B was owned by HHCC.  In 2001, HHCC and the Kims entered into the RUA discussed above, which dealt with HHCC's use of parking spaces and a cafeteria located in Parcel A's basement.  (*Id.*).  Parcel A was sold by the Kims to the Simi Valley Shopping Center, which subsequently sold it to Appellee 1111 Sunset LLC's predecessor-in-interest in September 2007.  (*Id.* ¶ 41).

In June 2010, Appellee filed a lawsuit against HHCC in Los Angeles County Superior Court.  (Appellants' Appendix, Ex. 7 at 528).  Appellee alleged HHCC had failed to abide by the terms of the RUA and sought damages.  Specifically, Appellee claimed HHCC had breached the RUA by parking in spaces designated solely for Parcel A under the RUA.  HHCC filed a cross-complaint alleging Appellee had breached the RUA by failing to grant HHCC access to Parcel A's cafeteria.  HHCC

3

1  sought declaratory relief in the form of a judicial determination of its rights under

2  the RUA.  (*Id.* at 602).

3      On May 10, 2012, HHCC and Appellee entered in a Settlement Agreement

4  that resolved all disputes and claims related to the RUA.  (*Id.*, Ex. 3 at 336).

5  Pursuant to this Agreement, the parties agreed to enter into a First Amendment to

6  the RUA, as discussed above.  The parties also filed a stipulation to have the terms

7  of the amendment confirmed by a judicial confirmation.  (*Id.* at 339).  Entering into

8  the Amended RUA was a condition precedent to HHCC's ability to obtain a new

9  loan to refinance the property.  Appellee was required under the Amended RUA to

10  release garnishment levies held against HHCC's Parcel B and file a satisfaction of

11  judgment in its favor in a separate 2008 action.  (*Id.* at 339).  HHCC represented in

12  the Settlement Agreement that it had the "full right, legal power and actual

13  authority" to enter into the Agreement.  (*Id.* at 342).  A Judgment and Permanent

14  Injunction was entered by the Superior Court on August 17, 2012, and provided that

15  the RUA was "hereby amended as set forth in the Amendment."  (*Id.* at 291).  This

16  Judgment and the Amended RUA were recorded with the Los Angeles County

17  Recorder's Office on September 7, 2012.

18      **B.**    <u>**The Current Litigation and Accompanying Lis Pendens**</u>

19      In 2013, HHCC filed a Complaint and First Amended Complaint in state

20  court against Appellee and its principal, Yuval Bar-Zemer, as well as several other

21  defendants.  (*Id.*, Ex. 24 at 940).  The suit alleged various causes of action arising

22  out of the Amended RUA and a loan agreement it had entered into with defendant

23  Downtown Capital, LLC.  HHCC then filed for bankruptcy, resulting in the current

24  adversarial proceeding.  The suit was removed to the Bankruptcy Court on August

25  31, 2015.  (*Id.*, Ex. 2).

26      Along with the filing of its First Amended Complaint, HHCC filed and

27  recorded a Notice of Lis Pendens and Notice of Action Pending and recorded a lis

28  pendens against Appellee's property.  After the bankruptcy proceedings were

initiated, the Bankruptcy Court granted Appellee's motion to expunge the lis pendens on the grounds that HHCC had not alleged any real property claim and its claims were barred by res judicata. (Appellee's Supplemental Appendix at 40). The court allowed Appellants leave to amend the First Amended Complaint. (*Id.*).

Appellants filed a Second Amended Complaint on April 18, 2016. (Appellants' Appendix, Ex. 3). The new complaint incorporated by reference each of HHCC's allegations from the First Amended Complaint, which alleged that HHCC's signatories to the Amended RUA did not have the authority to executed the Amendment. (*Id.*). On April 20, 2016, Appellants filed a lis pendens against Parcel A with the Los Angeles Recorder's Office. (*Id.* at 640). The lis pendens was also recorded against the easement for reciprocal negative easements over Parcels A and B pursuant to the terms of the Amended RUA. (*Id.*). Appellants' Second Amended Complaint included allegations that the easements contained in the Amended RUA are oppressive and unfair to Parcel B. (*Id.* at 70).

### C.      The Dismissal Order and Expungement Order

Appellee filed a motion to dismiss the Second Amended Complaint and to expunge the lis pendens against its property. The Bankruptcy Court granted the motions on July 15, 2016. The Bankruptcy Court ruled that res judicata barred Appellants from prosecuting the causes of action presented in the SAC, and that Appellants lacked standing to challenge the Amendment. The Bankruptcy Court then entered an Expungement Order with respect to the lis pendens because the causes of action that would have supported the lis pendens had been dismissed. (*Id.*, Exs. 14–16). The Bankruptcy Court did rule, however, that its expungement order would be stayed until this Court made a final determination on Plaintiffs' Petition, in accordance with the California lis pendens statute. Cal. Code Civ. Proc. § 405.5.

Appellants filed notices of appeal as to the dismissal order and the expungement order, as well as a Petition for Writ of Mandamus with respect to the expungement order. After the Bankruptcy Court corrected certain clerical errors in

1  an Amended Expungement Order on August 23, 2016, Appellants filed a

2  Supplement to their Petition for Writ of Mandamus.  (16-cv-5828, Docket No. 13).

## II.    JURISDICTION

4        This Court has jurisdiction to review final orders of a bankruptcy court under

5  28 U.S.C. § 158(a)(1).

## III.   DISCUSSION

###    A.    Legal Standards

8        Under Rule 12(b)(6), made applicable in adversary proceedings, as here,

9  through Federal Rule of Bankruptcy Procedure 7012, a bankruptcy court may

10  dismiss a complaint if it fails to "state a claim upon which relief can be granted."

11  Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012.  For example, a bankruptcy court

12  may dismiss a complaint as a matter of law for "(1) lack of a cognizable theory[,] or

13  (2) insufficient facts under a cognizable legal claim."  *In re Carpenter*, 205 B.R.

14  600, 604 (B.A.P. 9th Cir. 1997), *aff'd*, 164 F.3d 629 (9th Cir. 1998).

15        A bankruptcy court's dismissal of an adversary complaint for failure to state a

16  claim under Rule 12(b)(6) is reviewed de novo.  *In re EPD Inv. Co., LLC*, 523 B.R.

17  680, 684 (B.A.P. 9th Cir. 2015).  A dismissal without leave to amend is reviewed

18  for abuse of discretion.  *Id.*  A bankruptcy court abuses its discretion if it applies an

19  incorrect legal standard or its factual findings are illogical, implausible, or without

20  support from evidence in the record.  *Id.*  On appeal, the Court reviews a bankruptcy

21  court's conclusions of law, including its interpretations of provisions of the

22  Bankruptcy Code and state law, de novo.  *Id.*

23        In examining the Motions brought under Rule 12(b)(6), the Court follows *Bell*

24  *Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S.

25  662 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient

26  factual matter, accepted as true, to 'state a claim to relief that is plausible on its

27  face.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).  The Court "accept[s] all well-

28  pleaded allegations of material fact as true and construe[s] them in the light most

favorable to the nonmoving party." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012) (holding that the plaintiff had plausibly alleged the existence of an offer even if the disputed communications were "addressed to the general public in the form of advertisements").  The Court, based on judicial experience and common-sense, must determine whether a complaint plausibly states a claim for relief. *Iqbal*, 556 U.S. at 679.

The Court need not accept as true, however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Id.* at 678.  Nor is the Court required to accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  *See Mullis v. United States Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

As a general rule, "[o]n a motion to dismiss . . ., a court may take judicial notice of facts outside the pleadings." *In re Sihabouth*, No. ADV 13-02016, 2014 WL 2978550, at *3 (B.A.P. 9th Cir. July 2, 2014), *aff'd sub nom. In re: Khamla Sihabouth & Manysay Sihabouth et al.*, No. 13-1378, 2016 WL 3749061 (9th Cir. July 13, 2016).  A court may take judicial notice of court filings and other matters of public record.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006).  Judicial notice is proper of complaints, court orders, judgments, and other documents filed in other litigation.  *Kourtis v. Cameron*, 419 F.3d 989, 995 n.3 (9th Cir. 2005).

**B.    Analysis**

The Bankruptcy Court concluded that Appellants did not have standing to raise their claims and, alternatively, that the claims were barred by res judicata.

**1.    Appellants' Standing to Challenge the Amended RUA**

Appellants' claims concern the validity and enforceability of the Amended RUA.  The Second Amended Complaint (SAC) alleges that at the time the Amended RUA was signed, HHCC was in a state of internal conflict.  (Appellants' Appendix, Ex. 3 at 43).  It alleges that HHCC was part of the Western California Presbytery

7

("WCP") of the Korean American Presbyterian Church ("KAPC").  (*Id.* at 44).  The WCP is the immediate higher governing body for the HHCC, and has authority over church property during any dispute.  (*Id.*).  HHCC itself is governed by the "Session," which is subordinate to the WPC.  (*Id.*).  On March 29, 2011, the WCP removed the acting pastor from the HHCC, declared the HHCC in dispute, and took control of HHCC property pursuant to the constitution of the KAPC.

The Amended RUA was signed during a period Appellants allege the WCP remained in control of the church's property.  (*Id.* at 47).  The Amended RUA was signed by three members of the HHCC "Session" on behalf of HHCC.  But the Session did not have authority to bind the HHCC to such an agreement because the WCP had taken control of the church.  (*Id.* at 48) ("Defendants TAK, OWH and YIM had no authority to execute the Amendment without both the valid resolution of the Session and the approval of the WCP.").  The SAC alleges the WCP never gave such authority, rendering the Amended RUA invalid and unenforceable against Appellants.  (*Id.*).  In addition, the SAC alleges that Appellee knew HHCC's signatories did not have the authority to enter into the agreement or bind HHCC to the Amended RUA.  (*Id.* at 70).

The Bankruptcy Court found that Appellants, as corporate outsiders, lacked standing to pursue these claims.  The court based its decision on (1) the decision in *Korean Philadelphia Presbyterian Church v. California Presbytery*, 77 Cal. App. 4th 1069, 92 Cal. Rptr. 2d 275 (2000), and (2) California Corporations Code § 208(a).

In *Korean Philadelphia*, the California Court of Appeal held: "A corporate outsider cannot bring suit to challenge a corporation's management or control. Only a shareholder, officer, or director has standing to do so."  77 Cal. App. 4th at 1083 (citing 9 B.E. Witkin, *Summary of Cal. Law*, Corporations, § 127(9th ed. 1989)).  Corporations Code section 208(a), the provision discussed in the cited Witkin treatise, similarly states:

> No limitation upon the business, purposes or powers of the corporation or upon the powers of the shareholders, officers or directors, or the manner of exercise of such powers, contained in or implied by the articles or by Chapters 181, 192 and 203 or by any shareholders' agreement shall be asserted as between the corporation or any shareholder and any third person, except in a proceeding (1) by a shareholder or the state to enjoin the doing or continuation of unauthorized business by the corporation or its officers, or both, in cases where third parties have not acquired rights thereby, or (2) to dissolve the corporation or (3) by the corporation or by a shareholder suing in a representative suit against the officers or directors of the corporation for violation of their authority.

This provision "restricts third parties from questioning the manner in which the corporate directors have exercised their powers, unless the third parties fall within the enumerated categories, such as the state when it is seeking to enjoin the continuation of unauthorized business, or the corporation is being dissolved." *Snukal v. Flightways Mfg., Inc*., 23 Cal. 4th 754, 787, 98 Cal. Rptr. 2d 1 (2000). Prior to the passage of this statute, suits by third parties had become increasingly disfavored.  15 Cal. Jur. 3d Corporations § 163.  Section 208(a) was the "culmination" of that trend.  *Id.* ("[A] defense introduced against a contract that had been executed in whole or in part by a corporation was looked upon with disfavor. Contracts of corporations that were malum in se or malum prohibitum were not enforceable, but contracts not objectionable on those grounds became subject to only a limited application of the doctrine of ultra vires.  This development in the law has culminated in [section 208].").

Citing these sources, the Bankruptcy Court noted that Appellants "rely heavily on the [signatories'] alleged lack of authority to execute the ARUA on [HHCC's] behalf.  However, as a corporate outsider, [Appellant] has no standing to challenge the [signatories'] authority or the ARUA, which came about due the exercise of that authority."  (Memorandum of Decision, Appellants' Appendix, Ex.

13).  On appeal, Appellee echoes this logic, arguing the *Korean Philadelphia* decision and section 208(a) "make clear that Palisades does not have such standing to challenge Debtor's <u>control or corporate governance</u> . . . ."  (Answering Brief at 25) (emphasis in original).

Appellants argue that their claims are not "based on limits 'contained in' HHCC's articles," but rather "the validity of documents that purportedly bind HHCC . . . ."  (Appellants' Opening Brief at 14).  Thus, section 208(a) does not apply.  And the *Korean Philadelphia* decision is distinguishable, according to Appellants, because the plaintiffs in that case were not successors in interest to, or in privity with, the church or any members of the church.  (*Id.*).

The Court notes that the Bankruptcy Code allows the bankruptcy estate to "succeed[] to the causes of action which the debtor could have brought as of the commencement of the case, subject to any defenses the debtor may have faced." *Matter of Educators Grp. Health Trust*, 25 F.3d 1281, 1286 (5th Cir. 1994); *see also* 11 U.S.C. § 541 ("[Bankruptcy] estate is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case.").  In addition, when it purchased the property and Reserved Claims, Palisades surely thought it could enforce the rights of HHCC to challenge the validity of the Amended RUA to the same extent as HHCC.  And HHCC was, in fact, asserting the very same causes of actions now alleged at the time of its bankruptcy.

The Court is bound by the California authorities interpreting the right of a corporate outsider to challenge corporate executives' actions.  The question is whether the purchase of the property and Reserved Claims during the bankruptcy altered Appellants' status as corporate outsiders, rendering the California authorities inapplicable.  Appellants note that the Bankruptcy Court elsewhere in its decision concluded that Appellants were in privity with HHCC, such that res judicata applied.

1    Although the Court finds this to be a close and difficult question, the Court
2  agrees with the Bankruptcy Court that Appellants lack standing to challenge the
3  authority of the signatories to enter into the Amended RUA.  The purchase of the
4  property and reserved claims did not automatically entitle Appellants to challenge
5  any matter related to corporate governance of HHCC.  The California authorities do
6  not distinguish between claims seeking to enforce and those seeking to render
7  invalid actions taken by corporate officers.  Rather, as the California Supreme Court
8  stated in *Snukal*, the Corporations Code generally "restricts third parties from
9  questioning the manner in which the corporate directors have exercised their
10 powers."  23 Cal. 4th at 787.  Appellants claims do just that, by alleging the
11 signatories, then members of HHCC's directing body—the "Session"— acted
12 without valid authority.  Only certain parties may bring such claims under California
13 law, and Appellants are not included in that group.  The Court thus rejects
14 Appellants' argument that their claims fall outside the scope of section 208(a).

15    At the hearing, Appellants stressed that the purchase of the Reserved Claims
16 gave them standing to pursue these claims.  But Appellants' purchase of the
17 property from the bankruptcy estate's Trustee did not grant them the right to litigate
18 issues of corporate governance.  Even the Reserved Claims did not bestow on
19 Appellants any special status with respect to these types of issues.  Appellants cite to
20 no case under California law giving parties in their position standing to bring claims
21 like those in SAC.

22    At the hearing, Appellants argued that the Trustee "stood by their side" in this
23 litigation.  In addition, they argued the Trustee must have standing to pursue these
24 claims as he stands in the shoes of HHCC, the Debtor.  But the Trustee did not bring
25 the claims at issue.  Only Appellants filed the SAC.  In fact, the Trustee did not even
26 oppose the original motion to expunge the lis pendens or the motion to dismiss the
27 SAC heard before Judge Brand.

28

Appellants also argued at the hearing, for the first time, that although some of their claims might be defeated by section 208(a), others should survive.  For example, Appellants argued the claims sounding in common law, such as fraud, would not be reached by section 208(a)'s prohibition on claims regarding corporate governance.  The Court reiterates that this argument was never made, either in the Bankruptcy Court or in Appellants' briefs to this Court.  It would be unfair to both the Bankruptcy Court and the litigants to reverse the dismissal on grounds never presented below.  Even considering the argument, however, the Court concludes that allowing these types of "common law" claims to proceed would work an impermissible end-run around section 208(a).  Because the Court concludes that Appellants cannot challenge the Amended RUA due to the ban in section 208(a), the Court affirms the dismissal of the SAC in its entirety.

Accordingly, the Court concludes Appellants lacked standing under California law to bring the claims concerning the validity of the Amended RUA.  This conclusion alone is enough to affirm the Bankruptcy Court's orders.  Appellants' claims fail because they lacked standing to bring them.  Likewise, without any legal claims to back it up, the lis pendens was appropriately expunged.  *See infra.*

The Court recognizes the arguments made concerning the res judicata issue.  Appellants put forward a non-trivial argument that the claims in their SAC differ from those put forward by HHCC in the 2010 action because Appellants' claims are concerned with the *Amended* RUA, which did not even exist in 2010.  Appellee counters—and the Bankruptcy Court held—that the SAC, in reality, seeks to have the parties' rights governed by the RUA.  And because the RUA was conclusively interpreted and the rights of the parties under it adjudicated in the 2010 action, the two cases seek to enforce the same primary rights.  The Court will not decide this issue because, without standing, Appellants' claims fail as a matter of law.

Accordingly, the Bankruptcy Court is **AFFIRMED.**

1    **C.    Expungement Order**

2    The Bankruptcy Court granted Appellee's motion for expungement of the lis

3    pendens after it dismissed each of Appellants' claims.  Appellants argue that the

4    court should have undertaken an independent review to determine the merits of the

5    lis pendens despite the dismissal of the SAC.  The Court agrees with the Bankruptcy

6    Court and Appellee that such a review was unnecessary under the circumstances.

7    California law allows for the expungement of a lis pendens when "the claimant has

8    not established by a preponderance of the evidence the probable validity of the real

9    property claim."  Cal. Civ. Proc. Code § 405.32.  Given the dismissal of Appellants'

10   claims, it stands to reason the claims lacked "validity."  *See* 3 Witkin, Cal. Proc. 5th,

11   Actions, § 388[7] (2010) ("The lis pendens is incidental to the action in which it is

12   filed . . . ."); *see also In re Gonzalez*, No. ADV. 08-01756-ER, 2012 WL 603747, at

13   *5 (B.A.P. 9th Cir. Feb. 2, 2012) ("We also note that the bankruptcy court's

14   dismissal of the adversary proceeding alone would have rendered the Lis Pendens

15   ineffective."); *Bey v. Citi Mortg., Inc*., No. EDCV 15-1838-JGB (DTBx), 2015 U.S.

16   Dist. LEXIS 144433, at *11 (C.D. Cal. Oct. 23, 2015) ("That action has been

17   dismissed with prejudice, thus the lis pendens serves no purpose and must be

18   expunged.").

19   Accordingly, the Court concludes the lis pendens was properly expunged by

20   the Bankruptcy Court.  The Petition for Writ of Mandate is **DENIED**.

21   **D.    Scope of the Dismissal Order**

22   Appellants challenge the scope of the Bankruptcy Court's order dismissing

23   the SAC.  Specifically, Appellants argue that the Bankruptcy Court dismissed

24   claims other than those specifically challenged in Appellee's Motion to Dismiss.

25   (Appellants' Opening Brief at 22).  The Bankruptcy Court's order mistakenly

26   dismissed claims against defendants other than Appellees, such as Downtown

27   Capital, LLC and the Metropolitan Water District of Southern California, despite the

28   Motion to Dismiss not addressing the claims against those defendants.  Each of the

13

parties except Palisades has consented to a stipulation to have the Bankruptcy Court correct this error.  (Appellees' Joint Answering Brief at 4; Appellee's Answering Brief at 26).  The Court agrees with Appellees that this point is moot due to the lack of any controversy or disagreement between the parties.  The Court nonetheless **REMANDS** to the Bankruptcy Court for the limited purpose of correcting this error.

## IV.    CONCLUSION

Accordingly, the Court **AFFIRMS** the decision of the Bankruptcy Court to dismiss Appellants' Second Amended Complaint and to expunge the lis pendens, but **REMANDS** to the Bankruptcy Court for the limited purpose of correcting the scope of its dismissal order.

The Court **DENIES** the Petition for Writ of Mandamus.


IT IS SO ORDERED.


DATED:  January 5, 2016                          _____

                                                 MICHAEL W. FITZGERALD
                                                 United States District Judge


CC: Bankruptcy Court and BAP